UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| HAMILTON COUNTY EDUCATION ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil No.: 1:14-CV-105 ) Judge Collier |
| HAMILTON COUNTY BOARD OF EDUCATION, | ) ) ) |
| Defendant. | ) |

# **M E M O R A N D U M**

Before the Court are cross motions for summary judgment filed by Plaintiff Hamilton County Education Association ("Association") and Defendant Hamilton County Board of Education ("Board") (Court File Nos. 13, 17). Both parties responded (Court File Nos. 20, 21) and the Board replied (Court File No. 22). The Association asserts two claims for alleged violations of the Tennessee Education Professionals Negotiation Act ("EPNA") and one claim under 42 U.S.C. § 1983 for a violation of the Association's rights under the First Amendment. The parties generally agree on the facts (*see* Court File Nos. 15, 19), but disagree on the application of the law to those facts. For the reasons set forth below, the Court will **GRANT** the Board's motion for summary judgment (Court File No. 17) and **DENY** the Association's motion for summary judgment (Court File No. 13).

## I.  FACTUAL BACKGROUND[1]

Under the EPNA the Association was recognized as the exclusive representative of

---

[1] The facts are taken from the Association's statement of undisputed facts (Court File No. 15) which the Board generally admitted (Court File No. 19).

professional employees employed by the Board. The Association and the Board entered into a three-year collective bargaining agreement May 19, 2011. This agreement was governed by the EPNA. On June 30, 2014, the agreement was due to expire. In the intervening period, the Tennessee legislature passed the Professional Educators Collaborative Conferencing Act ("PECCA") which modified and amended the EPNA but which would not govern the relationship between the parties until the expiration of their three-year agreement. One relevant change for purposes of this case is that "management team members" (which include principals and assistant principals) would no longer be included in the membership totals of any professional employees' organization and would thus not have the right to participate in concerted activities as part of a professional employees' organization. Tenn. Code Ann. § 49-5-602(4), (8), (9).

On September 17, 2013, the Association conducted its Representative Assembly, a monthly meeting among the Association Representatives and the building representatives that together make up the Association's leadership. The next day, a teacher forwarded notes taken during the meeting to the Board's Assistant Superintendent for Human Resources Stacy Stewart. In response to those notes, Stewart inquired into what had occurred at the meeting and received several reports. Later that day, Stewart received a text message informing her of additional comments made by the Association's President Sandra Hughes at a principal's meeting where Hughes encouraged the principals to maintain their membership in the Association.

On September 27, 2013, Stewart wrote Hughes a letter in Hughes' official capacity as Association President (Court File No. 1-1, Compl. Ex. 1). In this letter she referenced the comments made at the September 18 principal's meeting and the PECCA and stated that the Association could not represent principals or count them among membership totals. She also

2

expressed concern regarding other statements made by Association representatives at their September 17 meeting that she worried "could be construed as intimidating" (*id.*). Specifically, she referred to Association claims that, without the Association, teachers could be subjected to ten hour workdays and 100+ page code of conduct documents and could lose medical and retirement benefits. Finally, she referenced pejorative comments made regarding a competing professional organization. She closed the letter by citing to the PECCA prohibition on professional organizations attempting to coerce employees. Stewart stated that continuing this conduct would "either result in an official request for a retraction of such statements or in clarification/correction of these statements by the district" (*id.*).

On March 20, 2014 the Association filed this action alleging that the letter violated the EPNA as well as the Association's rights under the First Amendment in Hamilton County Chancery Court (Court File No. 1-1). This action was removed by the Board to this Court on March 21, 2014 pursuant to 28 U.S.C. § 1446 (Court File No. 1).

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. ANALYSIS

#### A. State Law Claims

The Association alleges two substantive violations of Tenn. Code Ann. § 49-5-606. The Association first claims that the letter interfered with, restrained or coerced employees in the exercise of their rights under Section 603. It then claims that the Board dominated or interfered with the administration of the Association and assisted a rival organization. The Board in

response argues first that the Association's claims under the EPNA have been mooted by the passage of the PECCA. It then argues that even if these claims are not moot, the undisputed facts show that the Board did not violate either the EPNA or the PECCA.

    **1.  Mootness**

  The Board argues that the Association's state law claims have been mooted by the passage of the PECCA. The Association initially asserted claims under two portions of the EPNA. The Association first claims that the Board violated the EPNA as previously codified at Tenn. Code Ann. § 49-5-609(a)(2) which provides in relevant part that "It is unlawful for a board of education . . . to: . . . (2) Interfere with, restrain, or coerce employees in the exercise of rights guaranteed in § 49-5-603." (Court File No. 17-4, p. 74). PECCA—which the Board variously claims has "nullified," "repealed" and "replaced" the EPNA—contains the following provision codified at Tenn. Code Ann. § 49-5-606(a)(2); "It is unlawful for a board of education . . . to: . . . (2) Interfere with, restrain, or coerce employees in the exercise of rights guaranteed in § 49-5-603." The Association's second state law claim alleges a violation of the EPNA as previously codified at Tenn. Code Ann. § 49-5-609(a)(7) which provides in relevant part that "It is unlawful for a board of education . . . to: . . . (7) Dominate, interfere or assist in the administration of any professional employee organization" (Court File No. 17-4, p. 75). PECCA provides that "It is unlawful for a board of education . . . to: . . . (7) Dominate, interfere or assist in the administration of any professional employee organization." Tenn . Code Ann. § 49-5-606(a)(7).

  Merely renumbering a statute does not constitute a "repeal" of that statute such that a claim under that statute is moot. *See Cmty. Health Partners, Inc. v. Commonwealth of Kentucky*, 230 F.3d 1357n.1 (6th Cir. 2000). The Association's state law claims are not moot and are thus

5

justiciable by the Court.[2]

## 2. Substantive Claims

According to Tenn. Code Ann. § 49-5-606(a)(2) "It is unlawful for a board of education . . . to: . . . (2) Interfere with, restrain, or coerce employees in the exercise of rights guaranteed in § 49-5-603." Tenn. Code Ann. § 49-5-606(a)(7) provides that "It is unlawful for a board of education . . . to: . . . (7) Dominate, interfere or assist in the administration of any professional employee organization." Here, the parties agree on the basic facts, but disagree on the application of the law to those facts. The Association claims that the actions taken by Assistant Superintendent for Human Resources Stacy Stewart, on behalf of the board—writing and sending the letter of September 27, 2013—"[i]nterfere[d] with, restrain[ed], or coerce[d] employees in the exercise of rights guaranteed in § 49-5-603" or "[d]ominate[d], [or] interfere[d]" with the administration of the Association. Tenn. Code Ann. § 49-5-606(a)(2), (a)(7). The Board argues that the letter does not constitute a violation and further points to its own right—as preserved by Tenn. Code Ann. § 606(a)(5)—to "express any views or opinions on the subject of employer-employee relations; provided, however, that such expression shall contain no threat of reprimand, discharge or promise of benefits."

To aid in the construction of these provisions, the Association directs the Court to jurisprudence construing analogous provisions from the National Labor Relations Act. The Tennessee legislature patterned several sections of the EPNA after the NLRA and Tennessee courts have interpreted some of these provisions with reference to their NLRA analogues. *See, e.g.*, *Union Cnty. Educ. Ass'n v. Union Cnty. Bd. of Educ.*, No. E2013-02686-COA-R3CV, 2014

---

[2] For the remainder of this memorandum, all citations will be to the current Tennessee Code.

6

WL 4260812, at *6 (Tenn. Ct. App. Aug. 28, 2014) ("As we have noted, Tenn. Code Ann. § 49–5–603 is very similar to, and was clearly modeled after, section 7 of the NLRA."). The Board argues that resort to the NLRA is unnecessary and, for support, cites *Hamblen Cnty. Educ. Ass'n v. Hamblen Cnty. Bd. of Educ.*, 892 S.W.2d 428, 432 (Tenn. Ct. App. 1994) where the Tennessee Court of Appeals found that reference to the NLRA when construing a provision of the EPNA then codified at Tenn. Code Ann. § 49-5-611(a) was unnecessary because the relevant words—"salaries" and "wages"—were unambiguous on their face. *Hamblen Cnty. Educ. Ass'n*, 892 S.W.2d at 432. Tennessee courts have also declined to rely on cases construing the NLRA where the issue before the court concerned a provision of the EPNA that differed substantively from the NLRA. *See, e.g.*, *Blount Cnty. Educ. Ass'n v. Blount Cnty. Bd. of Educ.*, 78 S.W.3d 307, 316 (Tenn. Ct. App. 2002). The question here is first whether the determinative provision was modeled after an NLRA analogue and second whether the provision is ambiguous such that reference to the NLRA jurisprudence would be helpful.

The EPNA and the PECCA both preserved the right of the board of education to "express any views or opinions on the subject of employer-employee relations; provided, however, that such expression shall contain no threat of reprimand, discharge or promise of benefits." Tenn. Code Ann. § 49-5-606(a)(5) (formerly codified at Tenn. Code Ann. § 49-5-609(a)(5)). The NLRA contains an analogous provision, 29 U.S.C. § 158(c) which provides that

> The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

The Court finds it likely that—like the provision at issue in *Union County Board of Education*—the Tennessee provision was patterned after 28 U.S.C. § 158(c). This conclusion is bolstered by

7

the fact that in *N. L. R. B. v. Gissel Packing Co.*, 395 U.S. 575, 616 (1969), the Supreme Court found that § 158(c) "implements the First Amendment" in the NLRA statutory scheme. It seems reasonable to assume that the Tennessee legislature was aware that the First Amendment also applies to the State (by way of the Fourteenth Amendment) and thus would also be aware of the need for a provision along the lines of § 158(c) preserving that same protection. And unlike "salaries" or "wages," "threat" is not so easily amenable to precise definition. The Court thus finds the NLRA cases construing the § 158(c) to be persuasive in construing § 49-5-606(a)(5)

In *Gissel Packing*, the Supreme Court recognized that where an employer's alleged antiunion efforts "consist of speech alone, . . . the difficulties raised [by § 158(c)] are not [] easily resolved." *Id*. Expounding the rule for future cases, the Supreme Court stated that

> an employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, so long as the communications do not contain a "threat of reprisal or force or promise of benefit." He may even make a prediction as to the precise effects he believes unionization will have on his company. In such a case, however, the prediction must be carefully phrased on the basis of objective fact to convey an employer's belief as to demonstrably probable consequences beyond his control

*Id*. at 618. In *Gissel*, the employer's communications

> conveyed the following message: that the company was in a precarious financial condition; that the "strike-happy" union would in all likelihood have to obtain its potentially unreasonable demands by striking, the probable result of which would be a plant shutdown, as the past history of labor relations in the area indicated; and that the employees in such a case would have great difficulty finding employment elsewhere.

*Id*. at 619. The Court found that such dire predictions could reasonably be taken "as coercive threats rather than honest forecasts." *Id*. at 620.

A pair of cases from the United States Court of Appeals for the Sixth Circuit illustrate how courts construe 29 U.S.C. § 158(c) and provide instructive guidance for how this Court

8

should construe Tenn. Code Ann. § 49-5-609(a)(5). In *DTR Indus., Inc. v. N.L.R.B.*, 297 F. App'x 487, 493 (6th Cir. 2008) (hereinafter "*DTR II*"), the Sixth Circuit compared statements made by the company that it had previously held did fall under the protection of § 158(c) with statements that did not qualify for the protection. *Id*. (quoting *DTR Indus., Inc. v. N.L.R.B.*, 39 F.3d 106, 109 (6th Cir. 1994) (hereinafter "*DTR I*")). As an example of a statement that would qualify for protection, the Court pointed to a statement made by DTR's president in 1994:

> Having a union will hurt our business and our chances for success. We will lose some or all of our sole source business and create the danger of losing the confidence of our customers. Let us show what DTR and its associates can do together as a team without the union. You have our attention and our commitment. We will listen and we will respond and we will have a mutual commitment to each other.

*DTR I*, 39 F.3d at 109. The Court held that these statements fell under the protection of § 158(c) because they were objective assessments of risks associated with a union. Some of the company's customers that had previously used DTR as their sole source would likely diversify to decrease their exposure to the risk of a strike costing DTR a portion of their business. The Court also noted the collaborative tone of the statements. By contrast, the Court noted that other statements made by DTR's executive coordinator in 2002 were not protected by § 158(c). The executive coordinator made statements to the effect that unionization *would* result in layoffs because that is how DTR would deal with increased competition. *DTR II*, 297 Fed. App'x. at 495. These statements were not "carefully phrased predictions on the basis of objective fact," rather they "contained 'a threat of retaliation based on misrepresentation and coercion.'" *Id*. (quoting *Gissel*, 395 U.S. at 618.)

Comparing the Board's letter in this case to the statements in *DTR I* and *DTR II*, it is clear which side of the line this letter falls. The only statement in the document that could

9

potentially be construed as in any way threatening is the closing statement of the letter: "Continued such coercion, however, will either result in an official request for a retraction of such statements or in clarification/correction of these statements by the district." (Court File No. 1-1, Compl. Ex. 1). This statement is simply incomparable with the predictions of dire economic ruin at issue in the cases where the courts have found that the protection in § 158(c) did not apply. This statement is like the first statement in *DTR I*, but even more innocuous. Similar to the statements expressing hope for cooperation in *DTR I*, Stewart's letter also expressed interest in "maintaining a collaborative relationship with the Association." (Court File No. 1-1, Compl. Ex. 1). And the only "threat" that is contained is a threat that the Board would continue to express its view of the law. The Board made no threat of reprimand or discharge sufficient to take this letter outside the protection of Tenn. Code Ann. § 49-5-606(a)(5).[3]

The Association argues that the right of the board of the Board to express its views is limited by the provision in which it is contained. Subsection (a)(5) in its entirety provides that:

> It is unlawful for a board of education or its management personnel to: (5) Encourage or discourage membership in any organization by discrimination in hiring, granting of tenure or other terms or conditions of employment. The board of education or management personnel may express any views or opinions on the subject of employer-employee relations; provided, however, that such expression shall contain no threat of reprimand, discharge or promise of benefits[.]

Tenn. Code Ann. § 49-5-606(a)(5). The Association contends that this right of the board is

---

[3] The Parties make much of whether Stewart was speaking in the present or future tense when writing the letter. The Association argues she was speaking in the present tense and was thus misstating the law that currently applied. The Board in response argues she was speaking in the future tense about the exchanges that would be wrought by the PECCA. The Court need not decide these temporal intricacies. The relevant question is whether the Board was expressing its views on the subject of employer employee relations without the threat of reprimand or discharge and without the promise of benefits. The proper construction of the law governing employer-employee relations is unquestionably a view or opinion on the subject of employer-employee relations. Whether the Board's views were correct or incorrect is immaterial.

10

circumscribed by the context and seems to argue that so long as it does not allege a violation of the first sentence of subsection(a)(5); the second sentence may not provide a defense. The Court does not agree that the language used by the legislature can be so limited. The provision clearly states the Board "may express *any* views or opinions on the subject of employer-employee relations." Tenn. Code Ann. § 49-5-606(a)(5) (emphasis added). A weak structural argument cannot override this plain text of the statute. And this argument becomes even weaker when one considers that the provision serves to implement the First Amendment, *see Gissel Packing*, 395 U.S. at 616,—which unquestionably protects speech beyond the constraints urged by the Association.

The Association then argues the letter was inherently coercive because the person who sent it—the Assistant Superintendent for Human Resources—maintained hiring and firing powers. The Association argues the position of the speaker alone was enough to intimidate and interfere with protected activities. But this cannot be the rule. In the labor relations context, it will almost always be the case that the person speaking on behalf of management (the Board in this case) will have hiring and firing power. Such a defense would be almost meaningless if the Association's argument is accepted.

The Court finds the letter does not violate any of the provisions of the EPNA or PECCA because it falls squarely within the protective space afforded to the Board to "express any views or opinions on the subject of employer-employee relations," Tenn. Code Ann. § 49-5-606(a)(5), and it does not contain any threats of reprimand or discharge. The undisputed facts show the Board did not violate the provisions of the PECCA. The Court will thus grant summary judgment in favor of the board on its state law claims.

## B. First Amendment Claims

The Association alleges the Board has intruded upon its internal affairs in violation of its members' First Amendment rights to expressive association (Court File No. 21, Pls'. Resp. at 10). Such a claim involves three considerations: (1) The Association must show that it is an expressive association; (2) The government action must significantly burden the group's expression; and (3) The government's interest in the restriction must be outweighed by the plaintiff's right to expressive association. *Miller v. City of Cincinnati*, 622 F.3d 524, 538 (6th Cir. 2010).

Central to a First Amendment claim is a showing the government action burdens protected activity. "A government action does not interfere with the right of expressive association unless it directly or indirectly interferes with group membership." *Id*. The Association claims that Stewart's letter imposes a "burden" on the Association's speech. The Court does not agree. Although the Association is correct (a least in the abstract) that the Court "must also give deference to an association's view of what would impair its expression" *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 653 (2000), such deference has its limits. The cases cited by the Association—*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984), *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995), and *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000)—all involve government action seeking to force an expressive association to admit a member it did not wish to admit. In that situation, a group might reasonably believe that being forced to accept members who hold opposite views from those the association seeks to express might impair that expression. And so it makes sense to give those associations a degree of deference when determining whether forced inclusion of dissident members would impair the group's expression. That reasoning simply does not apply when the only government "action" at

12

Case 1:14-cv-00105-CLC-SKL Document 27 Filed 06/09/15 Page 12 of 13 PageID #: 686

issue is government speech expressing the government entity's view of the law. The only "threat" contained in the letter was a promise of more speech (*See* Court File No. 1-1, Ex. 1 ("Continued such coercion, however, will either result in an official request for a retraction of such statements or in clarification/correction of these statements by the district.")).

Because the letter does not burden the Association's right to expressive Association, the Court need not consider whether the Association is in fact an expressive association nor need the Court weigh the government interest in the alleged restriction. Because the undisputed facts do not establish a First Amendment violation, the Court will grant the Board's motion for summary judgment on that claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court will **GRANT** the Board's motion for summary judgment (Court File No. 17) and **DENY** the Association's motion for summary judgment (Court File No. 13).

**An order shall enter.**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**